UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAMAL RAVIKANT,

                Plaintiff,

v.

CHRISTINE H. ROHDE, M.D., JOSEPH P.
ALUKAL, M.D., COLUMBIA DOCTORS
FACULTY PRACTICE GROUP OF THE
COLUMBIA UNIVERSITY IRVING
MEDICAL CENTER AND THE NEW
YORK AND PRESBYTERIAN HOSPITAL,

                Defendants.

Case No. 21-cv-04758

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S OPPOSITON TO
DEFENDANTS' DAUBERT MOTION TO PRECLUDE PLAINTIFF'S
<u>ECONOMIC EXPERTS' TESTIMONY AT TRIAL</u>**

AARONSON RAPPAPORT
FEINSTEIN & DEUTSCH, LL
600 Third Avenue
New York, New York 10016
(212) 593-6700
*Attorneys for Defendants*
*Christine H. Rohde, M.D., Joseph P. Alukal,*
*M.D., Columbia Doctors Faculty Practice*
*Group of the Columbia University Irving*
*Medical Center and The New York and*
*Presbyterian Hospital*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................. 3

**ARGUMENT**................................................................................................................. 4

**CONCLUSION** ............................................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases**

*Carroll v. United States*, 295 F. App'x 382 (2d Cir. 2008) ................................................................ 6

*Crawford v Franklin Credit Mgt. Corp.*, 2015 US Dist LEXIS 194360

 (S.D.N.Y. Jan. 22, 2015) .......................................................................................................... 4

*Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993) ............................................ 3

*Ho Myung Moolsan Co. v Manitou Min. Water, Inc.*, 2010 US Dist LEXIS 127869

 (S.D.N.Y. Dec. 2, 2010) ........................................................................................................... 4

*Toyota Lease Trust v. Vill. of Freeport*, 2024 U.S. Dist. LEXIS 26841

(S.D.N.Y., Feb. 15, 2024) ........................................................................................................ 4

**Rules**

Fed. R. Evid. 702 ........................................................................................................................ 3

**PRELIMINARY STATEMENT**

Defendants CHRISTINE H. ROHDE, M.D., JOSEPH P. ALUKAL, M.D., JARROD BOGUE, M.D., JENNIE ROVANO, R.N. COLUMBIA DOCTORS FACULTY PRACTICE GROUP OF THE COLUMBIA UNIVERSITY IRVING MEDICAL CENTER AND THE NEW YORK AND PRESBYTERIAN HOSPITAL (collectively, the "defendants") submit this Memorandum of Law in reply to plaintiff's opposition to and in further support of their motion, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), to preclude plaintiff's economic experts' testimony at trial.

In their opening motion, defendants demonstrated how plaintiff's economic experts' proposed opinion testimony fails Federal Rule of Evidence 702's general requirements of reliability and relevance in all respects. The factual foundation for the purported opinions was pure speculation that plaintiff would have been fundraising for Evolve II during the period of alleged incapacitation as it failed to consider plaintiff's other activities during that same period and the other factors that impacted Evolve II, such as COVID and the conversion to a rolling fund. Likewise, plaintiff's experts could not even agree on a single methodology, and, instead, advance two alternatives, neither of which is the reliable and proper method even according to their own testimony. Unsurprisingly, their conclusion is just as unfounded and speculative.

Rather than respond to this showing, plaintiff's opposition instead confirms that his experts' "opinions" are indeed premised upon assumption, upon assumption, employ improper methodologies, and ultimately lead to a purely speculative economic loss claim that is precisely the sort *Daubert* and Rule 702 are designed to prevent being presented to a jury. To be sure, as will be discussed below, plaintiff's experts' fundamental flaws do not go to the weight of the evidence, but, instead, are the precise sort of string of assumptions that render their testimony

inadmissible. Thus, for the reasons that follow and those in defendants' opening motion, this Court should grant defendants' motion in its entirety.

<u>REPLY ARGUMENT</u>

<u>PLANITIFF'S ECONOMIC EXPERTS' "OPINIONS" ARE PURE
SPECULATION THAT CANNOT BE PRESENTED TO A JURY</u>

As defendants noted in their opening motion, claims for economic loss "cannot be remote, contingent or speculative, and must be awarded on the basis of reasonable certainty." *Toyota Lease Trust v. Vill. of Freeport*, 2024 U.S. Dist. LEXIS 26841, *11 (S.D.N.Y., Feb. 15, 2024). Plaintiff pays mere lip service to this requirement for the simple reason that his experts' opinions do not remotely meet it. Contrary to plaintiff's opposition, his experts' flaws do not go to the weight of the evidence, but are fatal to their admissibility at trial. *Crawford v Franklin Credit Mgt. Corp.*, 2015 US Dist LEXIS 194360, at *23-24 (S.D.N.Y., Jan. 22, 2015) (internal citations omitted) ("P's calculations for lost earning potential relied on a string of assumptions like, 'He would have gotten into med school, would have passed his boards, then would have gotten a residency.' Although reliance on a single, reasonable assumption, by itself, might go only to weight, and not admissibility, in combination, these numerous, dependent assumptions render Smith's testimony with respect to lost wages speculative and thus inadmissible"); *see Ho Myung Moolsan Co. v Manitou Min. Water, Inc.*, 2010 US Dist LEXIS 127869, at *21-22 (S.D.N.Y. Dec. 2, 2010) (precluding damages expert on lost profits as opinion was "wrought with unsupported and speculative assumptions").

It is, perhaps, for this reason that plaintiff devotes a significant portion of his opposition to deflection arguments, none of which have merit and none of which rebut defendants moving demonstration. First, for instance, plaintiff deflects by pretending defendants argued that the *type* of economic loss plaintiff claims is not a recognized damage, when defendants did no such thing.

Instead, defendants showed that the factual basis for plaintiffs' claimed economic loss and the methodology for computing the loss was speculative.

As to the foundation for plaintiff's experts' opinion, as defendants noted in their opening motion, the evidence upon which those experts relied does not support that he would not be able to raise funds and deploy capital during the period of incapacitation. To that end, Evolve II had been formed over two years before the subject surgery in October 2019, with no action taken to that date. The contention that the inactivity that continued until October 2020 was caused by the surgery has no basis in fact.

Indeed, during that time period, as defendants detailed, plaintiff was engaged in a whole host of other activities belying the claim that he could not make calls to potential investors. For instance, from November 2019 to January or February 2020, he appeared on around 15 podcasts to promote his book (Ex. C at 483). This included flying from New York to Dallas for Glenn Beck's show in December 2019/January 2020 (Ex. C at 489). He was also intimate with multiple partners and active on dating apps.

Plaintiffs' experts conceded they did not consider any of these other activities when making their calculations (Ex. G at 84-86). This, of course, goes right to the very foundation of their purported opinion when plaintiff testified that when he finally got all of the money for the Evolve II/The Rolling Fund in November 2020, all it took was three weeks of phone calls to raise $4M (Ex. C 525-526).

The same holds true for the impact of COVID on the investment landscape. Naval himself readily acknowledged it was a bad time to raise money from April 2020 until the fall (Ex. D at 102). Likewise, plaintiffs' experts also acknowledge, as they must, that the COVID pandemic created significant market strain during that same period (Ex. G at 38). Plaintiff himself testified

that in March or April of 2020 potential investors knew he had stopped investing because of COVID (Ex. C at 567). And yet, plaintiff's experts failed to account for this factual impact on his prospective earning ability, nor does plaintiff address this in opposition. Similarly, plaintiff's experts did not factor that the second fund was converted to a rolling fund, and that platform was not available until Fall 2020.

Rather than go to the weight of the evidence, these facts go right to the very foundation of his experts' purported opinion rendering it inadmissible. *See*, *e.g.*, *Crawford v Franklin Credit Mgt. Corp.*, 2015 US Dist LEXIS 194360, at *23-24 (S.D.N.Y., Jan. 22, 2015); *Carroll v. United States*, 295 F. App'x 382, 385 (2d Cir. 2008) (holding that where the decedent never worked as a physician's assistant and never took the licensing exam necessary to practice medicine and did not show that he accepted or worked in such a position in the past, earnings as a physician's assistant were wholly speculative).

Compounding those fatal foundation deficiencies is the improper methodologies used by plaintiffs' experts. Notably, plaintiff and his experts never contend that he makes money in the real world the way they are valuing his alleged loss income here. There is no dispute that plaintiff only makes money upon an exit event. But now, plaintiff and his experts are changing how to value his claimed loss income for purposes of this lawsuit. He never made or makes money at the "present value" of an asset unless and until there is an exit event. The value of the company at any other time has no bearing on his claim for lost income.

Despite readily acknowledging that many of the companies that venture capital funds invest in fail, the entire basis for plaintiff's economic loss claim here is that the 42 companies his brother invested in would all have given him a return on his investment based on their present value at the time of the lawsuit. The speculation of such a valuation method is patent. One can

only imagine that by the time of trial, a significant number of the companies would have failed leading to yet a different valuation. None of this meets the reasonable certainty standard. It cannot be emphasized enough that plaintiff never makes money until an exit event. It is, therefore, only the value at the time of the exit event that has any bearing on his *actual* economic loss (if any).

Plaintiff and his experts *never* refute this. They instead just continually posit that his economic loss in this lawsuit is based on "whether these investments are presently worth more than the purchase price for these securities," not the value at exit compared to investment. As noted above, however, that present value varies wildly depending on when it is calculated, and does not reflect what return on investment the plaintiff would get. That comes only from an exit event.

Alternatively, plaintiff and his experts advance that his economic loss should be valued using his return on investment from Evolve I. First, it should be noted that in doing so, plaintiff and his experts once again concede that he makes no money until an exit event. In any event, assuming a rate of return for Evolve II based on Evolve I is precisely the sort of rife speculation that renders expert economist testimony inadmissible. Evolve I was comprised of different companies in a different economic climate. Aside from plaintiff's involvement in both, there is no basis, and plaintiff's experts do not point to any, for assuming an identical rate of return. Even in opposition, plaintiff fails to actually address this component other than applying a sub heading in his motion.

In sum, plaintiff's economic experts' purported opinions are precisely the sort of string of assumptions that render them inadmissible.

**CONCLUSION**

For the foregoing reasons and those in Defendants' opening motion, it is respectfully requested that this Court grant Defendants' motion for exclusion of the plaintiff's economic experts' testimony at trial, and for such other and further relief as this Court deems just, equitable and proper.

Dated: New York, New York
       February 14, 2025

 

Respectfully submitted,

*Robert J. Cecala*

ROBERT J. CECALA (5886)
AARONSON RAPPAPORT
FEINSTEIN & DEUTSCH, LLP
Attorneys for Defendants
CHRISTINE H. ROHDE, M.D., JOSEPH
P. ALUKAL, M.D., COLUMBIA
DOCTORS FACULTY PRACTICE
GROUP OF THE COLUMBIA
UNIVERSITY IRVING MEDICAL
CENTER AND THE NEW YORK AND
PRESBYTERIAN HOSPITAL
600 Third Avenue
New York, New York 10016
(212) 593-6700